**FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| WENDY TOWNLEY; AMY WHITLOCK; ASHLEY GUNSON; HEATHER THOMAS; DAX WOOD; CASJA LINFORD; WESLEY TOWNLEY; JENNY RIEDL; TODD DOUGAN; BRUCE WOODBURY; JAMES W. DEGRAFFENREID; REPUBLICAN PARTY OF NEVADA,<br>          *Plaintiffs-Appellees*,<br><br>v.<br><br>ROSS MILLER, Secretary of State of Nevada,<br>          *Defendant-Appellant*,<br><br>and<br><br>KINGSLEY EDWARDS,<br>          *Intervenor-Defendant*. | No. 12-16881<br><br>D.C. No.<br>3:12-cv-00310-RCJ-WGC |

2                    TOWNLEY v. MILLER

| | |
|---|---|
| WENDY TOWNLEY; AMY WHITLOCK; ASHLEY GUNSON; HEATHER THOMAS; DAX WOOD; CASJA LINFORD; WESLEY TOWNLEY; JENNY RIEDL; TODD DOUGAN; BRUCE WOODBURY; JAMES W. DEGRAFFENREID; REPUBLICAN PARTY OF NEVADA, *Plaintiffs-Appellees*, v. ROSS MILLER, Secretary of State of Nevada, *Defendant*, and KINGSLEY EDWARDS, *Intervenor-Defendant-Appellant.* | No. 12-16882 D.C. No. 3:12-cv-00310-RCJ-WGC OPINION |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Chief District Judge, Presiding

Argued and Submitted
March 11, 2013—San Francisco, California

Filed July 10, 2013

TOWNLEY v. MILLER                    3

Before: John T. Noonan, Jr., Raymond C. Fisher and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Fisher

---

**SUMMARY**[*]

---

**Civil Rights**

The panel vacated the district court's preliminary injunction and remanded with instructions to dismiss for lack of standing an action challenging Nevada election law, Nev. Rev. Stat. § 293.269, which allows voters the ability to register their disapproval of all the named candidates running for a particular office in statewide and presidential elections by voting for "None of these candidates," commonly referred to as NOTC.

Pursuant to the law, the Secretary of State must count and report to the public the number of NOTC ballots cast for each office, but they cannot be counted in determining the winner among the named candidates in those races. Plaintiffs alleged that the law disenfranchises voters by disregarding ballots cast for NOTC in determining the winner of elections. Plaintiff moved for a preliminary injunction prohibiting the state from allowing the NOTC option to appear on any ballot.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

4                    TOWNLEY V. MILLER

The panel held that seven of the plaintiffs, who expressed an intent to vote but did not assert an intent to cast a ballot for NOTC in the November 2012 election or any subsequent election, lacked standing because they had not suffered an injury-in-fact that was actual or imminent.  The panel held that the two plaintiffs who asserted a concrete intent to cast ballots for NOTC, nevertheless failed to establish that the relief they sought, removing the NOTC option from the ballot, would redress their injury.  Finally, the panel held that the remaining plaintiffs, two Republican presidential elector designees and the Nevada Republican Party, lacked competitive standing because they failed to establish that their alleged injury, that NOTC would potentially siphon votes from the Republican Party's nominee, was fairly traceable to the conduct being challenged.

---

**COUNSEL**

Catherine Cortez Masto, Attorney General, and Kevin Benson (argued), Senior Deputy Attorney General, Carson City, Nevada, for Defendant-Appellant Ross Miller, Secretary of State of Nevada.

Paul Swen Prior, Snell & Wilmer LLP, Las Vegas, Nevada, and Michael T. Morley (argued), Law Offices of Michael T. Morley, Washington, DC, for Plaintiffs-Appellees.

John P. Parris (argued), Law Offices of John P. Parris, Las Vegas, Nevada, for Intervenor-Defendant-Appellant Kingsley Edwards.

## OPINION

FISHER, Circuit Judge:

Since 1975, Nevada has given its voters the ability to register their disapproval of all the named candidates running for a particular office in statewide and presidential elections by voting for "None of these candidates," commonly referred to as NOTC. The Secretary of State must count and report to the public the number of NOTC ballots cast for each office, but they cannot be counted in determining the winner among the named candidates in those races. They do, of course, provide a way for disaffected voters to express themselves other than by simply not voting. In June 2012, plaintiffs challenged this 37-year-old state election law by suing in the United States District Court for the District of Nevada to prohibit the NOTC option from appearing on the November 2012 ballot and any others thereafter. Their contention is that unless NOTC votes are given "legal effect" in some manner, those voters are "disenfranchised" and so the NOTC option cannot appear on the ballot at all. Although the merits of their arguments are questionable,[1] we do not resolve them because we hold that none of these plaintiffs has standing to assert the claims made in this lawsuit.

### BACKGROUND

In 1975, the Nevada legislature passed a law permitting voters to register their opposition to all candidates running in statewide or presidential races by casting a ballot for "None of these candidates" instead of one of the named candidates.

---

[1] *See, e.g., Townley v. Miller*, 693 F.3d 1041, 1042 (9th Cir. 2012) (Reinhardt, J. concurring).

6                    TOWNLEY V. MILLER

*See* Nev. Rev. Stat. § 293.269. The statute has three subsections. Section 293.269(1) mandates the inclusion of a "None of these candidates" option on every ballot for any statewide office or for President and Vice President of the United States. Section 293.269(2) provides that only votes cast for *named candidates* shall be counted in determining the winner of those elections. Section 293.269(3) provides that voters shall be instructed that they may select "None of these candidates" only if they have not voted for any named candidate in a particular race.[2]

---

[2] The full text of § 293.269 is as follows:

1. Every ballot upon which appears the names of candidates for any statewide office or for President and Vice President of the United States shall contain for each office an additional line equivalent to the lines on which the candidates' names appear and placed at the end of the group of lines containing the names of the candidates for that office. Each additional line shall contain a square in which the voter may express a choice of that line in the same manner as the voter would express a choice of a candidate, and the line shall read "None of these candidates."

2. Only votes cast for the named candidates shall be counted in determining nomination or election to any statewide office or presidential nominations or the selection of presidential electors, but for each office the number of ballots on which the additional line was chosen shall be listed following the names of the candidates and the number of their votes in every posting, abstract and proclamation of the results of the election.

3. Every sample ballot or other instruction to voters prescribed or approved by the Secretary of State shall clearly explain that the voter may mark the choice of

As plaintiffs themselves argue, § 293.269 was enacted with the sole intent of providing voters the opportunity to express their lack of confidence in all of the candidates for elected office – to send a message to candidates that they need to "'clean up [their] act' if [they] get into office." Minutes, Assembly Election Committee, Nevada State Assembly (Mar. 18, 1975); *see also None of the Above*, Wall St. J., Dec. 22, 1975 ("A heavy vote in [the NOTC] space would, of course, be a strong expression of displeasure with available choices."); Tom Gardner, *Candidate 'None' didn't do as well in the general*, Reno Evening Gazette, Nov. 11, 1978 (noting that the bill's "original intent was to give voters an opportunity to express lack of confidence in a candidate").

In presidential, senatorial and gubernatorial general elections, NOTC has typically garnered only a few percent of the vote. *See* Nate Silver, *In Nevada, No One is Someone to Watch*, FiveThirtyEight, N.Y. Times, Aug. 27, 2010, http://fivethirtyeight.blogs.nytimes.com/2010/08/27/in-nevada-no-one-is-someone-to-watch/. In primary elections, however, the ballots cast for NOTC have at times exceeded those cast for one or more named candidates. For example, in the 1980 presidential primaries, more voters cast ballots for NOTC than for Ted Kennedy, and primary winner Jimmy Carter only narrowly "beat" NOTC. *See* Chris Black, *The Political Revolution: How to Throw the Bums Out*, Boston Globe, Oct. 28, 1990, at A29, 1990 WLNR 1100058; *see also* Christopher W. Carmichael, *Proposals for Reforming the American Electoral System After the 2000 Presidential Election: Universal Voter Registration, Mandatory Voting, and Negative Balloting*, 23 Hamline J. Pub. L. & Pol'y 255,

---

the line "None of these candidates" only if the voter has not voted for any candidate for the office.

299–300 (2002) (identifying several occasions on which NOTC garnered more ballots than votes received by named candidates).

In June 2012, eleven plaintiffs filed suit against the Nevada Secretary of State, alleging that § 293.269(2) disenfranchises voters by disregarding ballots cast for NOTC in determining the winner of elections. Seven plaintiffs are Democratic, Republican or Independent registered voters who "intend to vote" but have not expressed an intent to cast a ballot for NOTC in any election. Two plaintiffs expressed an intent to cast a ballot for NOTC. The final two plaintiffs were Republican designees for presidential electors for the November 2012 general election. The Nevada Republican Party, which expressed its "strong interest in ensuring that 'None of These Candidates' does not appear as a ballot option," joined this appeal in support of the plaintiffs.

Of critical importance, the operative complaint does *not* challenge subsection 1 of the NOTC statute – that is, plaintiffs do not assert that the requirement that NOTC appear on the ballot violates federal constitutional or statutory provisions. Plaintiffs challenge only subsection 2 of the NOTC statute. They argue that the state's refusal to give legal effect to ballots cast for NOTC disenfranchises voters who cast such ballots. Although plaintiffs challenge only subsection 2, the remedy they seek is not that the state be ordered to give legal effect to ballots cast for NOTC. Rather, they ask that the state be enjoined from allowing NOTC to appear on the ballot altogether.

Plaintiffs moved for a preliminary injunction prohibiting the state from allowing NOTC to appear on any ballot, including the ballot for the November 2012 election. The

district court granted plaintiffs' motion and stated that it would bar the state from allowing NOTC to appear on the ballot.

The Nevada Secretary of State and intervenor Kingsley Edwards immediately appealed and filed emergency motions to stay the district court's order.[3]  A motions panel of this court granted a stay of the injunction pending appeal.  *See Townley v. Miller*, 693 F.3d 1041, 1042 (9th Cir. 2012). NOTC consequently appeared on the November 2012 ballot.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over the district court's entry of a preliminary injunction under 28 U.S.C. § 1292(a)(1).  We review de novo questions of Article III justiciability, including standing.  *See Porter v. Jones*, 319 F.3d 483, 489 (9th Cir. 2003).

## DISCUSSION

To establish standing, a plaintiff must demonstrate (1) that he suffered an injury in fact, *i.e.*, an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) that there is a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury will likely be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

---

[3] Kingsley Edwards intervened in support of the Secretary of State because he previously cast a ballot for NOTC and has an interest in ensuring that it continues to be a ballot option.

10                    TOWNLEY V. MILLER

At the preliminary injunction stage, plaintiffs must make a clear showing of each element of standing. *See id.* at 561 ("[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."); *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (articulating "clear showing" as the burden of proving standing at the preliminary injunction stage).

Plaintiffs seek injunctive relief, not damages, and "[a]s a general rule, in an injunctive case this court need not address standing of each plaintiff if it concludes that one plaintiff has standing." *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 522 (9th Cir. 2009).[4] We therefore examine whether at least one plaintiff has standing in this case.

**1.    Non-NOTC Voter Plaintiffs**

According to the First Amended Complaint, seven plaintiffs expressed an intent to vote but did not assert an intent to cast a ballot for NOTC in the November 2012 election or any subsequent election. Plaintiffs argue that

---

[4] Plaintiffs also seek declaratory relief, as well as attorney's fees and costs. We need not examine standing as to these requests for relief, however, as neither provides a basis for plaintiffs' standing to sue. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit."); *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (holding, in a lawsuit challenging the legality of government action, that because a declaratory judgment would not require the government to take or abstain from taking action, it did not redress the plaintiff's injury).

these individuals "are harmed by the prospect of their ballots not being counted or given legal effect, depending on whether they cast their ballots for 'None of These Candidates.'"

The non-NOTC voter plaintiffs have not suffered an injury-in-fact that is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. The proposition that these plaintiffs have standing because they may, at some point, depending on which candidates decide to run in a future election, choose to cast a ballot for NOTC and therefore be denied a right that they assert exists epitomizes speculative injury. This category of plaintiffs therefore lacks standing.

**2.  NOTC Voter Plaintiffs**

Two plaintiffs, Jenny Riedl and Todd Dougan, have asserted a concrete intent to cast ballots for NOTC. Plaintiffs argue that Riedl and Dougan have standing because "[c]learly, a person who intends to cast his ballot of 'None of These Candidates' is a 'proper party' to litigate whether it is proper for Secretary Miller to present 'None of These Candidates' as a ballot alternative, and then disregard ballots cast for it."

We agree with plaintiffs that the first two standing requirements are met. In light of their stated intent to cast ballots for NOTC, the injury Riedl and Dougan assert – the harm caused by the Secretary refusing to give legal effect to their ballots – is sufficiently concrete and imminent, not

conjectural or hypothetical.[5]   This injury is also causally related to the challenged conduct – the Secretary of State's failure to give legal effect to ballots cast for NOTC.

Riedl and Dougan fall short, however, in establishing that the relief they seek would *redress* the injury they argue is caused by § 293.269(2).   Plaintiffs say they are harmed because the ballots cast for NOTC are not given legal effect, yet they do not actually ask that, as the remedy for this injury, the Secretary of State be ordered to give legal effect to such ballots.   Rather, they demand that the option of casting a ballot for NOTC be entirely removed from the Nevada election system.   As a result, if plaintiffs were to prevail in this lawsuit, voters' opposition to named candidates would not be given legal effect, but instead voters would no longer have the opportunity to affirmatively express their opposition at the ballot box at all.   The relief plaintiffs seek will therefore *decrease* their (and other voters') expression of political speech rather than increase it, worsening plaintiffs' injury rather than redressing it.

The proposition that plaintiffs must seek relief that actually improves their position is a well-established principle.   As then-Judge Kennedy noted more than three decades ago, "[t]he court's inability to redress the claimed

---

[5] Although the complaint asserts Riedl and Dougan's intent to cast ballots for NOTC only in the 2012 presidential election, we assume without deciding that these plaintiffs' standing is not lost because the 2012 election has already occurred.   *See Moore v. Ogilvie*, 394 U.S. 814, 815–16 (1969) (discussing the "capable of repetition, yet evading review" doctrine in the election challenge context); *Nelson v. King Cnty.*, 895 F.2d 1248, 1254 (9th Cir. 1990) ("Th[e 'capable of repetition, yet evading review'] exception governs cases in which the plaintiff possesses standing, but then loses it due to an intervening event.").

injury may be manifest" where "the requested relief will actually worsen the plaintiff's position." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982); *see also id.* ("[I]f the requested relief would worsen the plaintiff's position . . ., the plaintiff lacks standing."); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 188 n.4 (2000) (characterizing *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973), as a case in which redressability was lacking because "the relief sought in *Linda R.S.* – a prosecution which, if successful would automatically land the delinquent father in jail for a fixed term with predictably negative effects on his earning power – would scarcely remedy the plaintiff's lack of child support payments" (internal citation omitted)). This case presents precisely such a scenario.[6]

Allowing standing here, where granting plaintiffs' requested relief would decrease – indeed, eliminate – an important benefit state law grants to Nevada voters, would undermine the purpose of Article III standing. Standing focuses on whether a plaintiff has a "personal stake" in the action such that she will be an effective litigant to assert the legal challenge at issue. *See Baker v. Carr*, 369 U.S. 186,

---

[6] The cases plaintiffs cite do little to support their position. Unlike here, the plaintiff in *Orr v. Orr*, 440 U.S. 268 (1979), did not seek relief that would necessarily worsen his position. Rather, he argued that *he should not be required to pay* alimony to his ex-wife because similarly situated wives would not be required to pay under state law. *See id.* at 271. *Stanton v. Stanton*, 421 U.S. 7 (1975), is irrelevant because it did not involve the redressability question presented here. The only standing issue discussed was whether a mother seeking child support for the care of her 18-year-old daughter was the proper party to challenge a child support statute, rather than the daughter having to assert the legal challenge herself. *See id.* at 11–12.

204 (1962); *FDIC v. Bachman*, 894 F.2d 1233, 1236 n.1 (10th Cir. 1990). Nonparties to litigation may suffer directly from poorly considered decisions reached in actions brought by parties who may not have adequate incentives or motives to effectively present a legal challenge, particularly in a case such as this that involves important public rights. *See* 13A Charles Alan Wright et al., Federal Practice and Procedure § 3531.1 (3d ed. 2008); *see also id.* § 3531 (noting that the Article III standing requirement helps to ensure that courts will not make "[a]n improvident decision" that "may harm . . . individuals who are not before the court"). A plaintiff who seeks relief that advances, rather than undermines, her position is the party best suited to litigate her case zealously and present the best arguments for the court's consideration. *See Baker*, 369 U.S. at 204 (explaining that "[t]he gist of the question of standing" is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions").

"Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). Because the relief plaintiffs seek would worsen the position of voters who intend to cast ballots for NOTC, rather than redress the injury they assert, this category of plaintiffs lacks standing.

**3. Competitive Standing Plaintiffs**

The remaining plaintiffs – two Republican presidential elector designees and the Nevada Republican Party – rely on

the doctrine of competitive standing.  Competitive standing is the notion that "a candidate or his political party has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election." *Drake v. Obama*, 664 F.3d 774, 782 (9th Cir. 2011) (quoting *Hollander v. McCain*, 566 F. Supp. 2d 63, 68 (D.N.H. 2008)).  Plaintiffs argue that they have competitive standing because NOTC constitutes "an unconstitutional and illegal ballot alternative that would potentially siphon votes from the Party's nominees running on its 'Republican' ballot line."

Assuming without deciding that the potential loss of an election due to the appearance of NOTC on the ballot could fulfill standing's injury-in-fact requirement, plaintiffs nonetheless have not established that the *other* standing requirements are met as to the competitive standing plaintiffs. Specifically, they do not at all address the second and third prongs of standing, apparently believing that a plaintiff who experiences competitive injury has competitive standing. As we made clear in *Drake*, however, the potential loss of an election can be sufficient *injury-in-fact* to support standing, but the causation/traceability and redressability requirements still must be met for standing to exist.  *See Drake*, 664 F.3d at 783, 784 (noting that this circuit has "held that the 'potential loss of an election' was an injury-in-fact sufficient to give a local candidate and Republican party officials standing," but concluding that the political candidates challenging President Obama's eligibility for presidency "failed to establish redressability sufficient to establish standing" (quoting *Owen v. Mulligan*, 640 F.2d 1130, 1132–33 (9th Cir. 1981))).

Here, plaintiffs' failure to meet the causation and traceability requirement is their ultimate undoing. This case is distinguishable from the competitive standing cases plaintiffs cite, each of which asserted a constitutional or statutory challenge *to the inclusion* of a candidate on the ballot. *See Fulani v. Hogsett*, 917 F.2d 1028, 1029 (7th Cir. 1990) (challenging Indiana electoral officials' decision to allow presidential candidates on the ballot even though those candidates were not certified by the Indiana Secretary of State by the statutory deadline); *Schulz v. Williams*, 44 F.3d 48, 52–53 (2d Cir. 1994) (concluding that an intervenor had standing to appeal an injunction by the district court that required the inclusion of Libertarian candidates on the ballot even though the state Board of Elections had concluded that the petition to include those candidates was invalid); *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006) (challenging an official's decision to declare one candidate ineligible and replace him with a viable candidate). In each of these cases, the competitive injury was clearly traceable to the allegedly illegal action the lawsuit challenged.

In contrast, plaintiffs have not connected the competitive standing plaintiffs' injury to the conduct the complaint says violated their rights. *See Lujan*, 504 U.S. at 560. Plaintiffs' complaint does not challenge the inclusion of NOTC as a voting option on the ballot. Rather it challenges only the subsection prohibiting ballots cast for NOTC from being given legal effect. Plaintiffs having conceded the legality of the NOTC option being on the ballot – the voter option that would have a siphoning effect – the state's failure to give legal effect to the ballots cast for NOTC is immaterial to plaintiffs' alleged *competitive* injury. Therefore, plaintiffs have failed to establish that the injury alleged by the

competitive injury plaintiffs is fairly traceable to the conduct being challenged, so they too lack standing.[7]

## CONCLUSION

In sum, plaintiffs do not articulate a way in which any category of plaintiffs fulfills *all three* standing requirements. Instead, plaintiffs attempt to cobble together the three standing prongs from different groups – injury from the NOTC voter plaintiffs and competitive standing plaintiffs, traceability from the NOTC voter plaintiffs and redressability from the competitive standing plaintiffs.[8]  Manufacturing standing in this way is impermissible.

"However desirable prompt resolution of the merits . . . may be, it is not as important as observing the constitutional limits set upon courts in our system of separated powers." *Steel Co.*, 523 U.S. at 110.  Because plaintiffs lack standing, we vacate the preliminary injunction and remand with instructions that the district court dismiss this action without prejudice for lack of standing.

**REVERSED AND REMANDED.**

---

[7] Because plaintiffs' argument that the Republican Party has associational standing to assert the interests of its future nominees is premised on the competitive standing of those nominees, it fails for the same reason.

[8] Notwithstanding plaintiffs' failure to address redressability, it appears that the competitive injury plaintiffs would satisfy this prong if NOTC were removed from the ballot.